## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THERESA BERARDINUCCI, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 18-4193** |
| TEMPLE UNIVERSITY, et al., | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**Tucker, J.**                                                          **July 16,  2020**

Before the Court is Defendants Temple University and Temple University Kornberg School of Dentistry's Motion for Summary Judgement (ECF Nos. 21, 23) and Plaintiff Theresa Berardinucci's Response in Opposition (ECF No. 22).

### I.    PROCEDURAL HISTORY[1]

On September 28, 2018, Plaintiff Theresa Berardinucci ("Plaintiff") commenced this action in the Eastern District of Pennsylvania against Defendants Temple University and Temple University Kornberg School of Dentistry ("Defendants" or "Temple"). Plaintiff asserts claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), and a claim for retaliation under the Family and Medical Leave Act ("FMLA") in response to the termination of her employment with

---

[1] The Court's summation in the "Procedural History" and "Statement of Facts" sections derives from the Concise Statement of Material Facts submitted by the Parties. ECF No. 21-1. Accordingly, the Court will not cite directly to the Material Facts after each statement.

Defendants. Defendants filed their Answer and Affirmative Defenses on December 4, 2018. On

September 30, 2019, Defendants filed a Motion for Summary Judgement. The matter is now ripe

for disposition. For the reasons set forth below, summary judgement is DENIED.

## II.   STATEMENT OF FACTS[2]

In 2010, Temple received a grant from the Health Resources and Services Administration

("HRSA"), an agency of the U.S. Department of Health and Human Services. The term of the

grant ended on June 30, 2015. Temple hired three employees under the grant: a family dental

coordinator, a dental hygienist/patient coordinator, and an expanded functions dental assistant

("EFDA"). An EFDA is a specially trained and educated dental assistant who is qualified to

perform more extensive dental services. In April 2011, pursuant to the HRSA grant, Temple

hired Plaintiff as an EFDA in its Pediatric Clinic. Plaintiff knew when she applied for and

accepted the position that it was a grant-funded position.

### A.  Plaintiff's Health and Requests for Leave

Plaintiff claims to suffer from irritable bowel syndrome ("IBS"), diverticulosis and

arthritis. Beginning in June 2012, and consistently throughout her employment with Temple,

Plaintiff received intermittent FMLA leave for her arthritis in both of her knees, which is

formally diagnosed as mild to moderate degenerative joint disease.

Plaintiff received injections every six months to treat her arthritis. When experiencing a

flare-up of her arthritis, Plaintiff would be unable to stand or walk. As a result, Temple approved

Plaintiff's request for leave to attend doctor's appointments up to four to six times per month.

Temple never denied Plaintiff leave for her arthritis, nor did Temple ever interfere with her ability to take leave. Plaintiff never sought additional accommodations for her arthritis.

Beginning in April 2014, and consistently throughout her employment, Temple granted Plaintiff intermittent leave for unspecified gastrointestinal issues later identified as IBS and diverticulosis. Plaintiff suffered from abdominal pain, headaches, and urgent and prolonged bathroom visits. Temple approved Plaintiff for leave for doctor's appointments and flare-ups, and provided an accommodation which allowed Plaintiff to arrive to work up to two hours late. Plaintiff used the doctors' appointment leave one to two times per month and never used the full two hours work accommodation that Temple approved. Temple never interfered with Plaintiff's ability to take leave for these conditions, nor did it ever deny her any leave for these conditions.

Individuals that apply for FMLA leave at Temple work directly with the benefits department. The benefits department alerts an employee's supervisor when an employee has applied for leave, when the leave is approved, and when the leave is scheduled to terminate. The notices do not include any information about the details of any illnesses. Both Dr. Tellez-Merchan, head of the Pediatric Clinic, and Shanae Johnson, Plaintiff's direct supervisor, testified that they were not aware of the specific medical conditions for which Plaintiff was approved for FMLA leave.

After multiple extensions, Defendants terminated Plaintiff on March 16, 2016. On March 31, 2016, Berardinucci wrote to Dean Ismail thanking him for the multiple extensions. Plaintiff did not indicate in this letter that she felt Temple made its decisions related to her for discriminatory reasons or based on the exercise of her FMLA rights.

### III.    STANDARD OF REVIEW

Summary judgment is awarded only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, he has the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains his initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial.*" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v.*

*Paramount Communications, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.   ANALYSIS

### A.  ADA and PHRA Claims

Pennsylvania courts generally interpret the PHRA "in accord with its federal counterparts." *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (holding that PHRA claims are properly treated as coextensive with ADA claims); *see also Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995) ("The [PHRA] is construed consistently with interpretations of Title VII."); *Chmill v. City of Pittsburgh*, 488 Pa. 470, 491 (1980) ("[T]he Human Relations Act should be construed in light of principles of fair employment  law which have emerged relative to the federal [statute.]") (internal quotations omitted). Therefore, all analyses of Plaintiff's ADA claims apply equally to her PHRA claims.

### i.      Discrimination under the ADA and PHRA

To prevail, a plaintiff must establish a prima facie case of disability discrimination under the ADA. *See McDonell v. Douglas Corp. v. Green*, 411 U.S. 792, 792-93 (1973); *Kelly*, 94 F.3d at 105. To do so, she "must establish that she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006); *see also Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d. Cir. 1999). If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the termination. *McDonell*, 411 U.S. at 802. If the defendant can do so, then the burden shifts

back to the plaintiff to demonstrate that the defendant's offered reasons were pretextual.  *Id*. at

804.

Defendants do not dispute that Plaintiff is a qualified individual. However, they dispute

whether Plaintiff is disabled within the meaning of the statute and whether she was terminated

because of that disability. The Court finds that Plaintiff is disabled, as defined by the ADA.

Further, Plaintiff has raised a genuine issue of material fact as to whether Defendants' offered

reasons for her termination are pretextual.

### 1.  Plaintiff is disabled, as defined by the ADA.

A plaintiff is "disabled" for purposes of the ADA if she has "(A) a physical or mental

impairment that substantially limits one or more major life activities . . . . ; (B) a record of such

an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).

Major life activities for purposes of the ADA include but are not limited to "performing

manual tasks . . . eating, sleeping, walking, standing, lifting, bending . . . concentrating, thinking,

communicating, and working."  42 U.S.C. § 12102(2)(A).  Additionally, major life activities

include the operation of major bodily functions, which includes but are not limited to "normal

cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine,

and reproductive functions."  42 U.S.C. § 12102(2)(B).

An impairment is a disability for purposes of a discrimination claim if it "substantially

limits" the plaintiff's ability to perform major life activities as compared to most people in the

general population." 29 C.F.R. § 1630.2(j)(1)(ii). The term "substantially limits" is construed

broadly, favoring expansive coverage. 29 C.F.R. § 1630.2(j)(1)(i). An impairment does not need

to "prevent, or significantly or severely restrict, the individual from performing a major life

activity" in order to be "substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). An "individualized

assessment" is required to determine whether a plaintiff's impairment substantially limits her major life activities. 29 C.F.R. § 1630.2(j)(1)(iv). "The question of whether an individual is substantially limited in a major life activity is a question of fact." *Lewis v. University of Pennsylvania*, 779 Fed.Appx. 920, 925 (3d Cir. 2019) (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 763 (3d Cir. 2004), *superseded on other grounds*).

Plaintiff suffered from IBS, diverticolosis and arthritis. With regards to the IBS and diverticolosis, Plaintiff arrived late to work one to two times per month due to her inability to control her bowels. CSSMF ¶¶ 24–25, ECF No. 21-1. Furthermore, these conditions caused "abdominal pain, headaches, and the need for emergent and prolonged bathroom visits." CSSMF ¶ 23.  With respect to Plaintiff's arthritis, she testified that flare-ups of the condition rendered her unable to stand or walk. CSSMF ¶ 15. A reasonable jury could determine that these symptoms created substantial limitations of Plaintiff's life activities. Plaintiff has established a prima facie case of discrimination under the ADA and PHRA.

### 2.  There is a genuine issue of material fact as to whether Defendants offered reasons for termination are pretextual.

Once the employer articulates a non-discriminatory reason for termination, the employee can defeat summary judgement by demonstrating that the offered reason is merely pretext for discrimination. A plaintiff demonstrates pretext if she "point[s] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The employee must do more than demonstrate that the decision to terminate her was wrong. *Id.* at 765.  Instead, she must show "such weaknesses, implausibilities, inconsistencies, or

contradictions" in the employer's offered reasons that a reasonable factfinder could find those reasons "unworthy of credence." *Id*.

Dean Ismail, Dr. Hill, and Ms. Johnson all testified as to the reason for Plaintiff's termination. All three did, at some point, testify that Plaintiff was terminated because the HSRA grant ended. However, Plaintiff can point out inconsistencies in their stated reasons for her termination.

Dean Ismail stated that on top of the grant ending, Plaintiff was also terminated because "Beth, the hygienist, left because she didn't want to go out to the community, the cost of the program, and the type of staff that were needed at the time." Ismail Dep., ECF No. 22-15 at 60:22–61:6.  Dr. Hill stated that a "partial reason" for Plaintiff's termination was that the "infant care program was fully established and the students and faculty were fully capable of performing their job duties without an EFDA."  Hill Dep., ECF No. 22-10 at 33:23–35:11.  Ms. Johnson stated that the fact that Plaintiff was "catty, not a team player and [had] a pattern of calling out" was a "factor" in the decision to terminate her.  Johnson Dep., ECF No. 21-12  at 30:22–31:15

Additionally, Dean Ismail and Dr. Hill gave inconsistent accounts as to who made the decision to terminate Plaintiff. Dean Ismail testified that he made an independent decision. Ismail Dep., ECF No. 22-15 at 59:8–13.  Conversely, Dr. Hill testified that she did not consult Dean Ismail before making the decision to terminate Plaintiff and that she did not recall how, if at all, he was informed of her termination.  Hill Dep., ECF No. 22-10 at 36:21–37:4.

These inconsistencies create a genuine issue as to the circumstances of Plaintiff's termination. Although Dean Ismail, Dr, Hill and Ms. Johnson all testified that Plaintiff was terminated because the HSRA grant ended, the grant funding ended eight months before her termination. Furthermore, all three gave additional inconsistent "partial" reasons for Plaintiff's

termination. Finally, Dean Ismail and Dr. Hill gave contrasting accounts as to who made the ultimate decision to terminate Plaintiff. These inconsistencies, taken as a whole, could allow a reasonable jury to conclude that Defendant's offered reasons for Plaintiff's termination are pretextual. Therefore, this Court will deny Defendant's motion for summary judgement with respect to Plaintiff's claims for discrimination under the ADA and the PHRA.

## ii.   Relation under the ADA and PHRA

The analysis of a retaliation claim under the ADA "[varies] depending on whether the claim is characterized as 'pretext' or 'mixed-motives.'" *Krouse v. American Sterilizer Co*., 126 F.3d 494, 500 (3d Cir. 1997).  Plaintiff has chosen to proceed under a pretext theory and therefore must establish a prima facie case of retaliation. *Id*. To do so, she must show (1) she engaged in  protected employee activity; (2) her employer took adverse action either after or contemporaneous with the employee's protected activity; and (3) there is a causal connection between the employee's protected activity and the employer's adverse action. *Id.*

If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to put forth a "legitimate, non-retaliatory" explanation for the adverse employment action. *Id.* The employer can meet this burden by articulating any legitimate reason for the adverse action; it does not need to prove that this reason was the actual motivation. *Id.* at 500–01 ("[T]he employer's burden at this stage is 'relatively light.'").

If the employer meets this burden, the plaintiff must convince the factfinder that (1) the employer's explanation is false, and (2) the adverse employment action was really motivated by retaliation. *Id*. at 501. "The plaintiff must prove that retaliatory animus played a role in the employer's decision making process and that it had a determinative effect on the outcome of that process." *Id*.

Defendant does not dispute that Plaintiff was terminated sometime after making a request for FMLA leave. However, Defendant argues that requesting FMLA leave is not a protected activity for purposes of the ADA. Further, Defendant argues that if FMLA leave is a protected activity, there is no causal connection between that activity and her termination. This Court finds that Plaintiff has established a genuine issue of material fact as to whether requesting FMLA leave is a protected activity and whether there was a causal connection between her taking the FMLA leave and her ultimate termination.

### 1. There is a genuine issue of material fact as to whether Plaintiff engaged in protected employee activity.

A request for a reasonable accommodation under the ADA is a protected employee activity. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190–91 (3d Cir. 2003). The Third Circuit has held that a request for intermittent FMLA leave may constitute a request for a reasonable accommodation under the ADA under certain circumstances. *Capps v. Mondelez Global*, LLC, 847 F.3d 144, 147 (3d Cir. 2017). Although the Third Circuit has not elaborated on what those circumstances are, this Court has held that "a prospective request for periodic FMLA leave may serve as a request for reasonable accommodation." *Beishl v. County of Bucks*, 2018 WL 6812132, at *4 (E.D. Pa. 2018). A request for FMLA leave can be considered a request for a reasonable accommodation under the ADA when the employer knows or believes that the request is based on something other than a "'one-time' event." *Id.* (quoting *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 631 (E.D. Pa. 2017).

Defendant argues that *Capps* and *Beishl* are inapplicable to the present case because they dealt with failure to accommodate claims and not retaliation claims. However, Defendant points to no evidence that the standard for what constitutes a reasonable accommodation changes in the context of a retaliation claim versus a failure to accommodate claim. As such, Plaintiff has

demonstrated that there is a genuine issue as to whether her FMLA leave requests constitute protected employee activity in the form of a reasonable accommodation.

> **2.  There is a genuine issue of material fact as to whether there was a causal connection between the protected activity and the termination.**

The Third Circuit focuses mainly on two factors for finding the requisite causal connection in a retaliation case: "timing and evidence of ongoing antagonism." *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). Timing alone can be used to create an inference of causation and defeat summary judgement when the "temporal proximity between the protected activity and adverse action is unusually suggestive." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (internal quotation marks omitted). However, a defendant cannot disprove retaliation simply based on "mere passage of time." *Krouse,* 126 F.3d at 503 (internal quotation marks omitted).

If temporal proximity between the protected activity and the retaliatory conduct is missing, courts may look for "other evidence of retaliatory animus" during the intervening period. *Id.* at 503–04. "[C]ircumstantial evidence of a 'pattern of antagonism' following the protected conduct" can be used to establish the causal connection. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). However, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id.*

A plaintiff can, for example, establish the causal connection by demonstrating that her employer gave inconsistent reasons for her termination. Summary judgement can be precluded where a plaintiff demonstrates that her employer offered inconsistent explanations for the reason

she was fired and inconsistent accounts of who made the decision to fire her.  *See Cullen v. Select Medical Corp.*, 779 Fed.Appx. 929, 932 (3d Cir. 2019).

As discussed in Section IV(a)(i)(2), Plaintiff is able to point to inconsistencies both in the reason for her termination and who made the decision to terminate her. These inconsistencies meet the standard set out in *Cullen*, and a reasonable jury could find that they establish the requisite causal connection. As such, Defendant's motion for summary judgement is denied with respect to Plaintiff's claims for retaliation under the ADA and PHRA.

### B.  Retaliation Under the FMLA

To make out a retaliation claim under the FMLA, a plaintiff must demonstrate "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 301–302 (3d Cir. 2012).  FMLA retaliation cases proceed through the same burden-shifting framework as ADA retaliation cases. *See id.* at 302. This framework is described in detail in Section IV(A)(ii) and will not be repeated here.

Furthermore, courts look to the same evidence of causation for an FMLA retaliation case as they do for an ADA retaliation case. *See e.g. Lichtenstein*, 691 F.3d at 307 (citing *Farrell* and *LeBoon*, cases about ADA retaliation, to articulate the standard for causation in an FMLA retaliation case). In summary, courts may first look to see if the "temporal proximity" between the employee activity and the termination is "unusually suggestive." *Id.* If it is not, then the court is permitted to look for other evidence that "raise[s] the inference" of causation. *Id*.

Defendant does not dispute that Plaintiff invoked her right to FMLA leave, nor does it dispute that she suffered an adverse employment decision. However, Defendant claims that there

is no causal connection between the protected activity and the termination. The Court's analysis in the above section(s) apply equally to Plaintiff's retaliation claim under the FMLA articulated in this section. Plaintiff is able to point to inconsistencies in the reasons proffered for her termination, as well as who made the decision to terminate her. Such inconsistences create a genuine issue of material fact as to whether there was a causal connection between Plaintiff's taking of FMLA leave and her termination. As such, Defendant's motion for summary judgement is denied with respect to Plaintiff's claim for retaliation under the FMLA.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgement is DENIED. An appropriate order follows.